UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:07-CR-00026-BES-RAM |
| Plaintiff, | |
| v. | **ORDER** |
| JOSEPH R. FRANCIS, | |
| Defendant. | |

Presently before the Court is Defendant Francis's Motion for Change of Venue (#127), filed on March 20, 2008. The government filed its response to Defendant's Motion for Change of Venue (#135) on March 25, 2008. Francis filed his Reply in Support of Defendant's Motion for Transfer of Venue (#139) on March 31, 2008. A hearing was held on the matter on April 7, 2008.

**I. BACKGROUND**

On April 11, 2007, a grand jury in Reno, Nevada returned an indictment against Defendant Joseph Francis ("Francis"). (Indictment (#1) 1.) The indictment charges Francis with two counts of tax evasion relating to his ownership of two businesses incorporated under Subchapter S of the Internal Revenue Code, Mantra Films, Inc. ("Mantra Films") and Sands Media, Inc. ("Sands Media"). Id. ¶¶ 6-31. More specifically, the indictment alleges that for the tax years 2002 and 2003 Francis filed fraudulent tax returns for both Mantra Films and Sands Media which overstated deductions relating to the construction of a

1

residence in Mexico, insurance expenses, and consulting service expenditures. Id. ¶¶ 14-15, 27-28. The indictment also alleges that Francis filed fraudulent individual income tax returns for those years. Id. ¶¶ 16-17, 29-30.

According to the indictment, during 2002 and 2003 Francis was a legal resident of Incline Village, Nevada. Id. ¶ 1. The indictment further alleges that Sands Media was incorporated in Nevada and headquartered in Incline Village, and that a bank account used in the commission of the alleged offense was opened at the Incline Village branch of Wells Fargo Bank ("Wells Fargo"). Id. ¶ 3, 9. That notwithstanding, Francis is currently a resident of Los Angeles, California. Trial is set to begin on August 26, 2008. Francis has made a motion that the Court transfer this case to the Central District of California under Fed. R. Civ. P. 21(b). (Mot. to Change Venue (#127) 1.)

## II. DISCUSSION

Francis requests that this Court, for the convenience of the parties and in the interests of justice, transfer the instant action to the Central District of California. Id. at 1; see also Fed. R. Civ. P. 21(b). Fed. R. Civ. P. 21(b) provides: "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." In Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964), the Supreme Court identified ten factors a court should consider in deciding a motion to change venue in a criminal case. Id. at 243-44. The ten factors include:

> (1)[L]ocation of corporate defendant;[1] (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. Id. (footnote omitted).

---

[1] Though in Platt the Supreme Court had before it a corporate defendant, this principal has been applied to individual defendants as well. United States v. Daewoo Indus. Co. Ltd., 591 F. Supp. 157, 159 (D.C. Or. 1984) (citation omitted).

2

1    Francis is a resident of Los Angeles, California; thus, the first factor weighs in favor
2 of transfer. The location of possible witnesses also weighs in favor of transfer. As to that
3 factor, "[t]he Ninth Circuit has required more than a bald statement of numbers and general
4 location of witnesses in the cases where the issue of witness convenience is addressed."
5 Daewoo, 591 F. Supp. at 160 (discussing United States v. Testa, 548 F.2d 847 (9th Cir.
6 1977)). The cases require that the witnesses be identified, and the nature of their
7 testimony described. See id. (noting that in Lindberg v. United States, 363 F.2d 438 (9th
8 Cir. 1966), "the court found no abuse of discretion in the denial of a Rule 21(b) motion . . .
9 where transfer was sought but witnesses were neither named nor their testimony
10 described."). The convenience to the witnesses themselves, apart from the burden on the
11 parties of providing for their appearance, must be considered. Id. ("'Even though
12 prospective witnesses would have no standing to move for a transfer, their convenience
13 may certainly be considered . . . in the exercise of [the court's] discretion.'") (quoting United
14 States v. Olen, 183 F. Supp. 212, 219 (S.D.N.Y. 1960)).

15    Francis points to two sets of witnesses he claims justify a change of venue. The first
16 is comprised of seventeen government witnesses, twelve of which are located in the Los
17 Angeles area, and none of which are located in the District of Nevada. (Mot. Change of
18 Venue (#127) 3). The identities of these witnesses are listed as Armand Arce (Los
19 Angeles, CA), Michael Barrett (Los Angeles, CA), Cherie Bright (San Francisco, CA), Bill
20 Dreker (Beverly Hills, CA), Lauren Friedman (Los Angeles, CA), Bill Horne (Los Angeles,
21 CA), Mohamed Hadid (West Hollywood, CA), Christina Lucero (location unknown),
22 Samantha Lloyd (location unknown), Will L'heureux (Santa Monica, CA), Morgan Liddell
23 (San Francisco, CA), Craig Murrel (Irvine, CA), Brian Rayment (Tulsa, OK), Marh Rousso
24 (Burbank, CA), Jotika Teli (Ridgecrest, CA), Aaron Weinstein (Los Angeles, CA), and John
25 Welker (Los Angeles, CA). Id.

26    These witnesses will testify generally to the events surrounding the alleged tax
27 evasion--i.e., the preparation of allegedly false returns, and the establishment of Mantra
28 Films, Sands Media, and the investment and bank accounts employed in the alleged tax

3

fraud. The government does not dispute this, nor does it dispute that these witnesses represent the bulk of its trial witnesses. (Resp. (#135) 3 n.2.) In fact, the government can only point to two witnesses it may call, not identified by Francis, that reside in the District of Nevada–Revenue Agent Sue Cutler and Special Agent Mark Jensen, located in Las Vegas and Reno respectively. Id.

Francis also contends that he may call between twenty and thirty witnesses as part of his case substantially all of which reside in the Los Angeles area, and none from the District of Nevada. (Reply (#139) 5.) Included in this group are former employees of Francis, a psychologist, and a psychiatrist. Id. at 4. These witnesses will all testify to Francis's Attention Deficit Hyperactivity Disorder. Id. All of these witnesses are located in the Los Angeles area. Francis also plans to call witnesses that reside in the Los Angeles area to testify as to the use of the house in Mexico. Id. According to Francis, these witnesses will establish that the home in Mexico was not completed until 2005, and that it was used thereafter as a location to film commercial and promotion videos for Girls Gone Wild productions during the years in question.[2] Id.

For the twelve government witnesses located in Los Angeles, the Central District is more convenient. As to those witnesses not located there, including Agent Cutler, the Central District is just as easily reached as is the District of Nevada. The only government witness for which the District of Nevada is more convenient is Agent Jensen. Thus, the Central District is more convenient for the government's witnesses. Moreover, because all of Francis's witnesses reside in the Los Angeles area, the Central District would be more convenient for them. Therefore, the location of witnesses factor weighs in favor of transfer.

The remaining factors are neutral. The government alleges that during the years in question, 2002 and 2003, Francis held himself out to be a legal resident of the State of Nevada, and that he claimed such residency for tax purposes. (Indictment (#1) ¶ 1.) The government further alleges that he incorporated Sands Media in the District of Nevada, and

---

[2]The identities of these witnesses have been submitted to the Court *in camera*.

4

that he opened a bank account in the name of Sands Media at Wells Fargo Bank in Incline Village, Nevada. Id. ¶¶ 8-9. According to the government, this bank account was a critical tool in the alleged tax evasion scheme. (Resp. (#137) 5-6.)

Francis argues, however, that the account was actually opened in Los Angeles using an Incline Village address. (Reply (#139) 8.) He claims that other than that, all the related events occurred in Los Angeles, including the signing and preparation of tax returns. (Mot. Change of Venue (#127) 1.) Given the dispute over the facts of the case, it cannot be said that the alleged situs of events favors one side or the other.

The evidence in the case is documentary and has been provided to the defense. As a result, though it will have to be transported either to Los Angeles or Reno from San Francisco (Francis's counsel location), transportation to Los Angeles is no easier than it is to Reno. Consequently, the location of the evidence does not favor transfer. As to disruption to business, given the relatively short length of the trial (the parties have requested ten trial days) it does not appear that a trial in Reno would be any more burdensome than in Los Angeles.

Expense of the parties is also neutral. Francis has previously made it clear that he will not face financial difficulty in making appearances in Reno. The location of counsel factor too is neutral. Though Francis's counsel is in San Francisco, which is closer to Reno than Los Angeles, the availability of daily non-stop flights between San Francisco and both Reno and Los Angeles makes them equally accessible. The relative accessability of place of trial is the same in both Reno and Los Angeles; neither is more remote than the other. There are no special elements that might affect transfer here.

Because the location of the witnesses and the location of the defendant weigh in favor of transfer, and because there are no countervailing factors, the Court grants Francis's motion and transfers this case to the Central District of California.

### III. CONCLUSION

Accordingly, IT IS ORDERED Francis's Motion for Change of Venue (#127) is GRANTED. The Clerk shall take all necessary steps to transfer this action to the Central

5

1  District of California.
2     DATED: This 11th day of April, 2008.

_____
UNITED STATES DISTRICT JUDGE

6